UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


JOAN KIRKLAND, *et al.*,

        Plaintiffs,

-v-                                                    Case No.: 2:14-cv-2536
                                                           JUDGE SMITH
                                                           Magistrate Judge King

PAN-AMERICAN LIFE INSURANCE
COMPANY,

        Defendant.


**OPINION AND ORDER**

        This matter is before the Court on Defendant Pan-American Life Insurance Company's Motion to Stay Proceedings Pending Arbitration (Doc. 6), and Plaintiffs' Motion to Stay Arbitration (Doc. 9). After the aforementioned motions were filed, the parties settled Plaintiffs' breach of contract claims and therefore supplemental memoranda have been filed by both parties in support of their respective positions regarding whether the remaining bad faith claim is subject to arbitration. (*See* Docs. 19 and 20). This matter is therefore fully briefed and ripe for review. For the reasons that follow, Defendant's Motion to Stay Proceedings pending arbitration is **GRANTED** and Plaintiffs' Motion to Stay Arbitration is **DENIED**.

**I.    BACKGROUND**

        Plaintiffs Joan and Thomas Kirkland initiated this case against Defendant Pan-American Life Insurance Company ("Pan-American") asserting claims of breach of contract and bad faith based on Pan-American's denial of payment for medical benefits. Plaintiffs had a short term health insurance group policy with Pan-American, policy number PAL-STM-2008-REG

("Group Policy").

The Group Policy contains an arbitration provision that specifically provides:

Arbitration: If any Covered Person has a dispute, disagreement or claim against the Company, its authorized administrator, or any employee or agent of the Company or of its authorized administrator, which has not been resolved or settled after exhaustion of the Company's appeals procedures, then the dispute or disagreement shall be resolved by arbitration.  This provision shall be applicable to all claims or controversies arising under the Policy.  Arbitration shall be conducted in accordance with the Commercial Rules of Arbitration of the American Arbitration Association.

(*See* Group Policy, attached as Exhibit A to Defs.' Mot., Doc. 6).

Defendant initially argued that both Plaintiffs' claims for breach of contract and bad faith constitute a "dispute, disagreement, or claim against the Company," as well as, "claims or controversies arising under the Policy," and were therefore subject to mandatory arbitration.  The parties then reached a settlement as to Plaintiffs' breach of contract claims, where Defendant agreed to pay for the medical expenses which it initially denied.  Plaintiffs' bad faith claim remains, which alleges that Defendant "breached the implied convenant of good faith and fair dealing by: misrepresenting that it would pay for one base line mammogram and office visit; ignoring unrefuted evidence to show that Plaintiff Joan Kirkland's care and treatment relative to a perforated diverticulum was not a preexisting condition; and, by arbitrarily, capriciously and/or maliciously refusing to pay the Plaintiffs' medical claims."  (Pls.' Compl. ¶ 40, Doc. 3).

Defendant has submitted a demand for arbitration under the Commercial Rules of Arbitration of the American Arbitration Association.  Defendant maintains that even though it have agreed to pay Plaintiffs' medical expenses, the bad faith claim must nonetheless be submitted to arbitration pursuant to the Group Policy.

**II.     STANDARD OF REVIEW**

Under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The requirements set forth in the FAA were "designed to override judicial reluctance to enforce arbitration provisions, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Section 4 of the FAA sets forth the procedure to be followed by the district court when presented with a petition to compel arbitration and provides, in relevant part, that:

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. Thus, the Court must first inquire as to whether the parties have agreed to arbitrate the dispute at issue. If the district court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration. If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question. 9 U.S.C. § 4.

In order to show that the validity of the agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997). The required showing mirrors that required to withstand summary judgment in a civil suit. *Id.; see*

*also Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000).  But "[i]n order to show that the validity of the agreement is 'in issue' [under 9 U.S.C. § 4], the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate."  *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation.  *See Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) ("[W]e examine arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration.").  However, "[w]hile ambiguities … should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted).

**III.  DISCUSSION**

Defendant has moved to stay these proceedings pending arbitration and has filed its request for arbitration.  Plaintiffs, however, have requested a stay of arbitration and wish to proceed in this Court on the only remaining claim in this case, their bad faith claim.  The Court will first consider the enforceability of the arbitration provision in the Group Policy and then, if deemed arbitrable, will turn to the issue of whether the remaining bad faith claim is subject to

arbitration.

### A. Enforceability of the Arbitration Provision

Plaintiffs argue that the arbitration provision of the Group Policy is void and unenforceable because there was no meeting of the minds and because it lacks mutuality and/or is unconscionable. "Arbitration is simply a matter of contract between parties; it is a way to resolve disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-649 (1986).

In the case at bar, the Group Policy specifically provides:

> Arbitration: If any Covered Person has a dispute, disagreement or claim against the Company, its authorized administrator, or any employee or agent of the Company or of its authorized administrator, which has not been resolved or settled after exhaustion of the Company's appeals procedures, then the dispute or disagreement shall be resolved by arbitration. This provision shall be applicable to all claims or controversies arising under the Policy. Arbitration shall be conducted in accordance with the Commercial Rules of Arbitration of the American Arbitration Association.

(*See* Group Policy, attached as Exhibit A to Defs.' Mot., Doc. 6).

Plaintiffs argue that there was no meeting of the minds regarding arbitration because they were not alerted to the arbitration language in the Group Policy. Plaintiffs rely on *Henderson v. Lawyers Title Ins. Corp.*, 108 Ohio St.3d 265, 268 (2006), in support of this contention. In *Henderson*, the plaintiffs negotiated an insurance policy verbally and there was no discussion about the arbitration provision. They did not receive a copy of the insurance policy until five weeks later. The court held that the arbitration provision was unenforceable. But Plaintiffs in this case do not allege that they did not receive a copy of the Group Policy. And, assuming receipt of the policy, they had a duty to read the policy. "An insured is charged with knowledge

of the contents of his insurance contract." *Nickschinski v. Sentry Ins. Co.*, 88 Ohio App. 3d 185, 195 (Ohio Ct. App., Cuyahoga Cty 1993).

After reviewing the insurance contract, Plaintiffs had the ability to cancel the contract within ten days if they did not agree to the terms and they did not do so. (*See* Certificate of Coverage attached as Ex. 3 to Def.'s Reply, Doc. 12-3). Therefore, the Court find that there was a meeting of the minds with respect to the arbitration provision in the Group Policy.

Additionally, Plaintiffs argue that the lack of mutality in the arbitration clause is an unfair and unconscionable term. Specifically, Plaintiffs argue that the arbitration provision is binding exclusively on one party, the insured. Defendant argues that the arbitration provision applies to all claims or controversies arising under the policy and does not state that it only applies to the insured's claims. The Court agrees. Nowhere in the aforementioned arbitration provision does it state that the provision only applies to the insured. Therefore, Plaintiffs' arguments fail and the arbitration provision of the Group Policy is valid and enforceable.

### B. Whether Plaintiffs' Bad Faith Claim is Subject to Arbitration

The only remaining claim in this case is Plaintiffs' bad faith claim against Defendant based on the denial of payment for medical coverage benefits pursuant to the terms of the Group Policy. Defendant maintains that this claim is subject to arbitration, while Plaintiffs contend that it is not. The Group Policy contains an arbitration provision that is applicable "to all claims or controversies arising under the Policy." (*See* Group Policy, attached as Exhibit A to Defs.' Mot., Doc. 6).

Whether an issue is subject to arbitration is a matter of contract interpretation. In construing the arbitration provision in this case, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983). An arbitration provision containing the "arising out of" language has been construed as a broad provision. *See Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 330 (E.D. Pa. 2004) (when an arbitration provision provides for any dispute "arising out of" a particular contract, the provision is construed broadly to suggest that a given dispute is arbitrable); *see also Williams v. Imhoff*, 203 F.3d 758, 765, 766 (10th Cir. 2000) ("[W]e believe [the phrase, 'arising out of,'] must be broadly construed to mean 'originating from,' 'growing out of,' or 'flowing from.'").

Plaintiffs assert that their bad faith claim sounds in tort and not in contract, relying on *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St. 3d 690, 694-95 (1992) ("[T]he tort of bad faith arises as a consequence of a breach of duty established by a particular contractual relationship."). And because the parties have settled the breach of contract claim, the Plaintiffs argue that there are no further claims arising under the Group Policy that are subject to arbitration. (Pls.' Supp. Memo.

at 2, Doc. 19).  Despite Plaintiffs' argument, "tort claims and claims other than breach of contract are not automatically excluded from a contractual arbitration clause."  *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996) (involving such claims as fraud, breach of good faith and fair dealing).

Defendant argues that the Plaintiffs bad faith claim only exists because of the parties relationship pursuant to the Group Policy.  The Court agrees with Defendant that Plaintiffs' bad faith claim is based on Defendant's alleged wrongful denial of benefits under the Group Policy, and as such, only exists because of the Group Policy.  Therefore, Plaintiffs' bad faith claim "arises under" the Group Policy.  The Group Policy does not distinguish between the types of claims arising under the policy, such as tort or contract, but rather provides that "all claims or controversies arising under the Policy" must be submitted to arbitration.  Therefore, the Court finds Defendant's arguments well-taken and that Plaintiffs' bad faith claim is subject to the Group Policy's arbitration provision

**IV.     CONCLUSION**

Based on the foregoing, Defendant's Motion to Stay Proceedings Pending Arbitration is **GRANTED** and Plaintiffs' Motion to Stay Arbitration is **DENIED**.

This matter is therefore administratively stayed while the parties pursue arbitration. If any issues remain following arbitration, the parties must file a notice with this Court to reopen the case.

The Clerk shall remove Documents 6 and 9 from the Court's pending motions list.

The Clerk shall administratively stay this case.

    **IT IS SO ORDERED.**

        */s/ George C. Smith*
        **GEORGE C. SMITH, JUDGE**
        **UNITED STATES DISTRICT COURT**